**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| GABRIEL RAMIREZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-CV-1912 -NAB |
| ) | |
| ANDREW M. SAUL[1], ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Gabriel Ramirez's ("Ramirez") appeal regarding the denial of disability insurance benefits under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 10.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse and remand the Commissioner's decision.

**I.     Issues for Review**

Ramirez presents two issues for review. First, he asserts that the administrative law judge ("ALJ") failed to consider and address the Department of Veterans Affairs' ("VA") finding of

---

[1] At the time this case was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security. Andrew M. Saul became the Commissioner of Social Security on June 4, 2019. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Andrew M. Saul for Nancy A. Berryhill in this matter.

disability and its supporting evidence. Second, Ramirez asserts that the ALJ erred in not finding post-traumatic stress disorder ("PTSD") to be a severe impairment. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

**II.     Background**

On November 14, 2017, Ramirez applied for a period of disability and disability insurance benefits, alleging disability beginning December 1, 2015. (Tr. 321-22.) The Social Security Administration ("SSA") denied his claim, and Ramirez filed a timely request for hearing before an administrative law judge. (Tr. 258-59.) The SSA granted Ramirez's request, and an administrative hearing was held on April 24, 2018. (Tr. 201-38, 260-62.) Vocational expert ("VE"), Holly Berquist Neal, also testified at the hearing. (Tr. 231-38.)

On July 23, 2018, the ALJ found Ramirez not disabled as defined in the Social Security Act. (Tr. 16-26.) Ramirez requested a review of the ALJ's decision by the Appeals Council. (Tr. 317-20.) On September 7, 2018, the Appeals Council denied Ramirez's request for review. (Tr. 1-6.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Ramirez filed this appeal on November 9, 2018. [Doc. 1.] The Commissioner filed an Answer and the certified Administrative Transcript on February 1, 2019. [Docs. 13, 14.] Ramirez filed a Brief in Support of the Complaint on June 21, 2019. [Doc. 25.] The Commissioner filed a Brief in Support of the Answer on September 16, 2019. [Doc. 30.]

**III.    Standard of Review**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether

3

evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

## IV.     ALJ's Decision

The ALJ determined that Ramirez met the insured status requirements of the Social Security Act through June 30, 2018, and had not engaged in substantial gainful activity since December 1, 2015. (Tr. 18.) The ALJ found that Ramirez had the following severe impairments: degenerative changes of the spine and major depressive disorder. (Tr. 18.) But, the ALJ determined that Ramirez did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18.) The ALJ further found that Ramirez's mental impairments did not specifically meet the initial requirements for Listing 12.04. The ALJ found that Ramirez had the RFC to perform light work with the following additional limitations: (1) never climb ladders, ropes, and scaffolds; (2) occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; (3) frequently reach bilaterally; (4) avoid concentrated exposure to excessive noise and vibration; (5) avoid all exposure to operational control of moving machinery and unprotected heights. (Tr. 21.) The ALJ also found non-exertional limitations limiting Ramirez to jobs that

involve only simple, routine, repetitive tasks in a low stress job defined as occasional decision-making, occasional changes in the work setting, occasional judgment, and no paced production work.  (Tr. 21.)  The RFC further limited Ramirez to jobs that do not involve public interaction and occasional interaction with co-workers but with no tandem tasks.  (Tr. 21.)  Based on the RFC, the ALJ determined that Ramirez was unable to perform any past relevant work, but there was work that existed in significant numbers in the national economy that he could perform.  Therefore, the ALJ ultimately concluded that Ramirez was not disabled from December 1, 2015, the alleged onset date, through June 30, 2018 the date last insured.  (Tr. 25.)

**V.     Administrative Record**

The following is a summary of relevant evidence before the ALJ:

**A.     Hearing Record**

The ALJ heard testimony from Ramirez and Holly Berquist Neal, the VE.  Ramirez was represented by counsel.  (Tr. 204.)

**1.     Ramirez's Testimony**

Ramirez testified that he completed high school and served in the Air Force.  (Tr. 206.)  He completed his initial enlistment without being medically discharged, although he has a VA rating and is currently receiving VA disability benefits.  (Tr. 207.)  In the Air Force, he was an aircraft electronics technician, deployed to Afghanistan in 2005, to Iraq in 2007, and back to Afghanistan in 2009.  (Tr. 207-08.)  He testified that several incidents during his deployment, including proximity to mortar attacks and an insurgent attack on his base resulted in nightmares and flashbacks.  (Tr. 209-212.)  After his release from active duty, Ramirez worked and attended college.  (Tr. 213-18.)  Ramirez did not complete college, because he was unable to focus after

completing approximately two years of school.  (Tr. 217.)  He began struggling, his grades dropped, and he lost motivation.  (Tr. 218.)

Ramirez testified that anger and PTSD causes him to always be tired.  (Tr. 218.)  He has anxiety problems when trying to fall asleep.  (Tr. 218-19.)  He has nightmares three to five times a week about being deployed and getting attacked, despite taking medications.  (Tr. 219-20.) Ramirez estimated that he slept three to five hours every day and he is awake from one to two hours after having a nightmare.  (Tr. 219.)  He testified that he stopped working out, playing in a band, or going to family functions.  (Tr. 219.)  He has anger outbursts and road rage.  (Tr. 220-21, 231.)  He stated that the VA had not evaluated him for PTSD.  (Tr. 208-209.)  He took anxiety medicines three times a day, which made him drowsy.  (Tr. 228.)

Ramirez testified that he was took care of his two-year-old son at home.  The care for his son included feeding, changing, and taking him out to the parks.  (Tr. 230-31.)  He occasionally drove and went on quick shopping trips with his son.  (Tr. 231.)

### 2. Vocational Expert Testimony

Holly Berquist-Neal, a VE, testified to Ramirez's vocational abilities and work history. (Tr. 230-37.)  She testified that a hypothetical person of Ramirez's age, education and work experience—who was able to perform light work; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, frequently reach; avoided concentrated exposure to excessive noise, excessive vibration, avoid all exposure to operational controlled moving machinery and unprotected heights; was limited to simple, routine, repetitive tasks in a low stress job defined as only occasional decision making, only occasional changes in the work setting, only occasional judgement; no public interaction; occasional interaction with coworkers, but no tandem tasks—would not be able to perform Ramirez's past

6

relevant work. (Tr. 233-34.) The VE testified that the hypothetical person would be able to work as a marking clerk, a photocopy machine operator, or a mail clerk. (Tr. 233-34.)

The ALJ then asked if there were any other jobs that the hypothetical person could perform if he or she further avoided paced production work. (Tr. 234-35.) The VE testified that the hypothetical person could work as a photocopy machine operator, a mail clerk, or a housekeeping cleaner. (Tr. 235.)

The ALJ then asked if there were any other jobs that the hypothetical person could perform if he or she had to alternate between sitting or standing positions at 30-minute intervals throughout the day. (Tr. 235.) The VE testified that the hypothetical person could still work as a photocopy machine operator and a mail clerk, although the number of jobs would be reduced by 50 percent. (Tr. 235-36.)

The VE also testified that if the hypothetical person had more than one unexcused or unscheduled absence a month at the described jobs, this would preclude competitive employment. (Tr. 236.) Additionally, if the hypothetical person exhibits off-task behavior that exceeds 14 percent, this would preclude competitive employment for the described job. (Tr. 236.) Finally, the VE testified that if the hypothetical person had to take unscheduled breaks, this would preclude employment for the described jobs. (Tr. 236.)

      B.      **VA Records**

Ramirez summitted treatment records from the VA regarding his mental and physical impairments. Because Ramirez's briefing focuses on the ALJ's decision regarding his mental impairments, the Court will summarize those records. (Tr. 110-114, 124-26, 132-42, 156-70, 430-33, 453-55, 643-47, 665-69.)

The earliest treatment record for Ramirez in the administrative transcript is December 12, 2013.  (Tr. 141-142.)  Ramirez contacted the VA to schedule an appointment and it was noted that he was last seen in November 2012.  He reported that he had previously been prescribed paroxetine, but he had not taken it in a while and found himself increasingly more depressed.  He also reported that we was overwhelmed with school, unable to focus, and it resulted in him quitting school for the second time.  He admitted to suicidal ideation without a plan.

On December 16, 2013, Ramirez was seen by nurse practitioner Barbara Latal.  (Tr. 135-138.)  Ramirez presented with an agitated mood and mildly anxious affect.  Latal found that Ramirez's judgment was abnormal and he again indicated suicidal ideation without a plan.  He reported a decrease of interest in activities, nightmares three times per week, and sleep interruptions.  Latal diagnosed Ramirez with major depression-recurrent, rule-out PTSD[2].  His depression and PTSD screens were positive.  (Tr. 138.)  Latal prescribed paroxetine for Ramirez.  Dr. Teide Brisibe, a psychiatrist, reviewed Dr. Latal's treatment notes. (Tr. 138.)

Ramirez next received treatment on March 19, 2014.  (Tr. 132-135.)  Ramirez reported being less irritable since starting medication, but he was still depressed.  He stated he was "hyperstartled" to unexpected noises and sleeps for short periods of times, close to 3 hours at night.  He was tired during the day and takes 15 to 30 minute naps.  He was taking two classes on-line and doing well in them.  Nurse practitioner Latal observed a depressed and anxious mood with dysphoric affect.  She also determined he had fair insight and judgment, but dwelled on depression.  She diagnosed him with major depression rule out PTSD.  (Tr. 134.)  She increased his paroxetine and added mirtazapine to help with sleep maintenance.  He denied suicidal ideation.

---

[2] "Rule out" in a medical record means that the disorder is suspected, but not confirmed—*i.e.*, there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out."  *Byes v. Astrue*, 687 F.3d 913, 916 n.3 (8th Cir. 2012); (citing *United States v. Grape,* 549 F.3d 591, 593 n. 2 (3d Cir.2008)).

8

Ramirez next received treatment from nurse practitioner Latal in May 2014 (Tr. 124-26.) Ramirez reported he was doing better since his last visit and he had completed two semesters of school. He also reported passive suicidal thoughts and being anxious when in a crowd. He also reported having a panic attack when he was awakened to the sound of a pop and he continues to have dreams about the military. Latal observed that Ramirez had fidgety motor activity and a depressed, anxious mood. At this visit, she diagnosed him with major depression and PTSD.

Ramirez returned for treatment in October 2014 (Tr. 110-15.) He reported not doing well and his mood vacillates from euthymic to depressed. He told Latal that he was experiencing increased anxiety with palpitations and shortness of breath. He noted that his triggers were rocks, smell of garbage, ladders, heavy electrical equipment, fireworks, and stormy weather. He stated that he has nightmares, decreased energy and motivation, and passive suicidal ideation. Latal observed fidgety motor activity, depressed and anxious mood, and congruent affect. Latal diagnosed Ramirez with PTSD and depressive disorder. Latal noted that Ramirez declined referral to the PTSD clinic and PTSD 101 counseling. He was receptive to meeting with a peer support specialist. Latal increased Ramirez's medications.

On October 14, 2016, the VA issued a benefit entitlement letter, granting—among other disabilities—major depressive disorder at 50% disability. (Tr. 40-41.) The VA determined that he has major depressive disorder "claimed as" PTSD. The VA further determined that, after reviewing the evidence received, Ramirez's condition had not increased in severity sufficiently to warrant a higher evaluation and that his assigned disability percent (50 percent disability) would continue.

The next record of Ramirez receiving treatment occurs on October 20, 2017, although the treatment notes for that date states his last visit was September 2016. (Tr. 430-33.) Ramirez

9

reported that he has nightmares 60% of the time and experiences insomnia.  He also reported that he did not use the CPAP consistently.  He reported that he cares for his son, plays games with this family, goes to the movies with his wife, and he is walking more.  Ramirez reported daily passive suicidal thoughts that pass when he is distracted by tasks.  Latal noted a depressed and anxious mood and congruent affect.  Latal also noted that Ramirez's insight and judgment were fair.  Latal diagnosed Ramirez with major depression.  She indicated that Ramirez expressed interest in referral to the PTSD counseling, but was not definite with a decision.

Ramirez then visited Latal on February 16, 2018.  (Tr. 665-69.)  He reported that he was overly tired, but he had a good appetite.  He also reported that his focus, concentration, and motivation had decreased.  He stated that he had daily thoughts of suicide, but he was motivated by his son.  Latal observed slowed motor activity, dysphoric affect, and fair judgment and insight.  Latal again recommended group therapy, but Ramirez declined.  He agreed to individual therapy.  She diagnosed him with major depression.

The last appointment for Ramirez in the record is a visit with Latal on April 16, 2018.  (Tr. 643-47.)  Ramirez reported that he continued to feel anxious, but had not had panic attacks.  He noted that he was hypervigilant and his triggers are sounds in the house and thunderstorms.  He had decreased motivation and energy overall.  He experienced insomnia and deployment dreams 4 to 5 times per week.  He completed an evaluation for PTSD and met all 5 criteria.  He reported passive suicidal ideation.  Latal observed that his affect was less constricted, but anxious and dysphoric.  She also observed that his judgment and insight were fair.  She diagnosed him with major depression and PTSD.

The VA issued an updated benefits decision on May 31, 2018, following Ramirez's request for an increased rating.  (Tr. 51-60.)  The VA again denied him a higher evaluation, stating that

10

his evaluation of "PTSD, chronic with major depressive disorder, recurrent, moderate (previously rated as major depressive disorder (claimed as PTSD))" would continue to be 50 percent disabling. (Tr. 51.)

### C.     Medical Records – State Agency Psychological Expert, Margaret Sullivan

On December 13, 2017, Dr. Margaret Sullivan, the state agency psychologist, issued a report describing how the impairments affected Ramirez's ability to function. (Tr. 239-52.) She reviewed the psychiatric treatment records (HIT Response, HIT MER, and office treatment records from the VA), function reports, and other evidence supplied by Ramirez before the administrative hearing. (Tr. 239-52.) She diagnosed Ramirez with Depressive, Bipolar, and Related Disorders. (Tr. 243.) She opined that Ramirez was moderately limited in the ability to interact with others and mildly limited in the ability to interact with others; understand, remember, and apply information; concentration, persistence, or maintaining pace; and adapting or managing oneself. (Tr. 243, 248-49.)

## V.    Discussion

Ramirez alleges two errors on review.

### A.    VA Record Consideration

Ramirez first asserts that the ALJ failed to consider the VA's finding of disability and address the supporting evidence. Ramirez's application for disability insurance benefits was completed on November 14, 2017, therefore his case is subject to the most recent revisions of the social security regulations. For claims filed after March 27, 2017, the regulations state that evidence from other governmental agencies is "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(1). Therefore, the SSA will not provide any analysis about how it considered such evidence in its determination or decision. 20 C.F.R. § 404.1520b(c)(1). The SSA

will not include the analysis in claims, even those filed after March 27, 2017, that rely upon evidence for treatment that occurred before the revisions in the regulations. 20 C.F.R. § 404.1520c. Statements in the record that a claimant is disabled or unable to work do not direct the determination of whether a claimant is disabled under the Social Security Act, because that decision is reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(i).

The Court notes that Ramirez submitted most of the records regarding his mental impairments to the Appeals Council after the ALJ's decision. The mental health treatment records are sparse and most of them were submitted to the Appeals Council, not to the ALJ. When the Appeals Council denies review of an ALJ's decision after reviewing new evidence, the Court does not evaluate the Appeals Council's decision to deny review, but rather determines whether the record as a whole, including the new evidence, supports the ALJ's determination. *McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013).

Although the ALJ did not have to provide an analysis of how he considered the evidence from the VA, the opinion indicates that he considered the evidence relied upon by the VA in its disability ratings decision. (Tr. 22-23.) The VA records made up the bulk of the administrative record; therefore, the ALJ's review of the VA evidence was required to consider Ramirez's case. The ALJ cited to the treatment records, the VA disability benefits decision in the record at the time, and the state agency medical expert and psychologist's review of the medical evidence. The ALJ noted that his review of the psychiatric treatment records indicated that Ramirez had mild to moderate symptoms. (Tr. 23.) The ALJ also referred to the VA as an expert regarding PTSD. (Tr. 23.) The ALJ mentioned Ramirez's testimony and his activities of daily living. Based on the foregoing, the Court finds that the ALJ did not commit reversible error in his consideration of the VA records.

**B.     PTSD as a Severe Impairment**

Next, Ramirez states that the ALJ erred in not finding PTSD to be a severe impartment. After the ALJ has determined that a claimant is not engaged in substantial gainful activity, the ALJ then determines whether the claimant has a severe impairment or combination of impairments that has or is expected to last twelve months or will result in death.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(ii).  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms.  20 C.F.R. § 404.1508.  To be considered severe, an impairment must *significantly* limit a claimant's ability to do basic work activities.  *See* 20 C.F.R § 404.1520(c).  "Step two [of the five-step] evaluation states that a claimant is not disabled if his impairments are not severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Simmons v. Massanari,* 264 F.3d 751, 754 (8th Cir. 2001)).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.  "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two."  *Id.* (citing *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007)).  "It is the claimant's burden to establish that his impairment or combination of impairments are severe."  *Kirby*, 500 F.3d at 707 (citing *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000)).  "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard."  *Kirby*, 500 F.3d at 708.

Ramirez highlights the following statements by the ALJ, "The VA, which is considered to be an expert in post-traumatic stress disorder (PTSD), has not found it appropriate to attach that diagnosis to him.  The fact that they have determined that PTSD is not an appropriate diagnosis is persuasive evidence that suggests that depression is his only severe impairment."  (Tr. 23.)

13

In fact, in records submitted to the ALJ contained a diagnosis of PTSD.  (Tr. 646.) Therefore, the ALJ committed an error of fact as alleged by Ramirez.  The records submitted to the Appeals Council also show that eventually, the VA changed Ramirez's diagnosis to PTSD and awarded partial disability for the claim.  (Tr. 40, 51, 54.)  The Commissioner asserts that the treatment records were inconsistent regarding a diagnosis of PTSD and evidence in the record as a whole, supports the ALJ's decision. The Commissioner contends that SSA is not concerned with the technical diagnoses, but the limitations resulting from the impairments regardless of name.

Reversal and remand is not required if the ALJ's error was harmless and did not affect the outcome of the claim.  To show that an error was not harmless, a claimant must provide some indication that the ALJ would have decided the case differently if the error had not occurred.  *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012).  "While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand."  *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (internal quotations omitted).  "Remand is warranted where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision."  *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017) (citing *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008)).  In this case, the Court cannot affirmatively state that the ALJ would have made the same decision if he had realized that there was a PTSD diagnosis in the record.  The ALJ made a strong statement that the lack of a diagnosis by the VA was  "persuasive evidence" that PTSD was not a severe impairment. Therefore, the Court will reverse and remand this action for the ALJ to re-evaluate whether

Ramirez's PTSD is a severe impairment. The ALJ will also have the benefit of the entire administrative record.

## VI. Conclusion

The Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after addressing the deficiencies noted herein, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

Accordingly,

**IT IS HEREBY ORDERED** that the relief Plaintiff seeks in his Complaint and Brief in Support of Plaintiff's Complaint is **GRANTED in part and DENIED in part**. [Docs. 1, 25.]

**IT IS FURTHER ORDERED** that the ALJ's decision of July 23, 2018 is **REVERSED** and **REMANDED**. The ALJ shall re-evaluate whether Plaintiff's PTSD was a severe impairment.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall substitute Andrew M. Saul for Nancy A. Berryhill in the court record in this case.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of May, 2020.

15